IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SIRIUS COMPUTER SOLUTIONS, INC. | § | |
| | § | |
| *Plaintiff*, | § | |
| | § | |
| V. | § | Civil Action No. 5:15-cv-698 |
| | § | |
| JASON SPARKS, | § | |
| | § | |
| *Defendant*. | § | |

**PLAINTIFF'S SUPPLEMENTAL EVIDENCE IN SUPPORT OF APPLICATION FOR PRELIMINARY INJUNCTIVE RELIEF & REQUEST FOR EXPEDITED HEARING**

Plaintiff Sirius Computer Solutions, Inc. ("Sirius") files its Supplemental Evidence in Support of its Application for Preliminary Injunctive Relief and Request for Expedited Hearing, and in support thereof, it respectfully shows as follows:

## I. INTRODUCTION

Sirius moves to enjoin Defendant Jason Sparks, a former Storage Solutions Sales Specialist who resigned from Sirius in May 2015, from doing three things: (1) using and disclosing Sirius' confidential information obtained during his employment; (2) directly or indirectly contacting, soliciting, or otherwise engaging any Sirius employee to leave employment with Sirius; and (3) directly or indirectly soliciting any existing or potential customers of Sirius with whom Sparks dealt in his ten-plus months of employment. Sirius is entitled to a preliminary injunction because, without such relief, Sirius may continue to lose valuable employees and have its goodwill and business reputation irreparably harmed by Sparks' continued wrongful solicitation of Sirius' existing and potential customers. Moreover, as Sirius has discovered, Sparks remains in wrongful possession of Sirius' confidential information, information he indisputably was to return and no longer possess upon his separation of employment. Sparks likewise has used and disclosed this

confidential information since his departure from Sirius, either for his own benefit or the benefit of his new employer. Sparks' conduct has all been in violation of not only his common law duties owed to Sirius, but also the Confidentiality, Protection of Customer Relationships and Non-Solicitation Attachment A Agreement he signed and entered into with Sirius at the outset of his employment in June 2014 (Attachment A Agreement). As more fully explained in detail below, this Court should grant Sirius' request for preliminary injunctive relief and enjoin Sparks from engaging in the conduct specified above until a full trial on the merits can be held and more permanent injunction issued.

## II. SUPPLEMENTAL EVIDENCE

Attached hereto is the following supplemental evidence:

1. Exhibit 1 – Declaration of Stacye Schill

2. Exhibit 2 – Declaration of Joel Brillhart (with accompanying spreadsheets)

3. Exhibit 3 – Declaration of Brian Pixton

4. Exhibit 4 - Emails Maintained by Stacye Schill (Bates Nos. P-SCS-000130 to 000267)

5. Exhibit 5 – Additional Documents Pertaining to Attachment A Agreement (Bates Nos. P-SCS-000918 to 000927, P-SCS-000950 to 000968)

6. Exhibit 6 – Certifications of Jason Sparks (P-SCS-000928)

7. Exhibit 7 – Sparks Confirmation of Receipt of Handbook with accompanying relevant Handbook policies

8. Exhibit 8 – Selected Emails Produced by Jason Sparks relating to Solicitation of Sirius Employees

9. Exhibit 9 – Selected Emails Produced by Jason Sparks relating to Solicitation of Sirius Customers

10. Exhibit 10 – Selected Emails Pertaining to Jason Sparks Solicitation of Sirius Customers Prior to Separation

Additional supplemental evidence will be submitted at the requested expedited hearing, including, but not limited to, the following:

1. Deposition Testimony of Debbie Contreras (with accompanying exhibits)
2. Deposition Testimony of Brian Pixton (with accompanying exhibits)
3. Deposition Testimony of Jason Sparks (with accompanying exhibits)
4. Excerpts of Text Messages obtained from Jason Sparks
5. Emails and/or documents reflecting Jason Sparks use of Sirius' Confidential Information (under seal)

### III. FACTUAL BACKGROUND

As set out in Sirius's original petition filed in state district court, Sirius is a national IT solutions integrator of technology-based business solutions headquartered in San Antonio, Texas. Sirius maintains sales locations throughout the United States, including in the Pacific Northwest. It also has offices in several states, including Lake Oswego, Oregon.

All sales employees with Sirius, such as Sparks, are required to enter into a "Confidentiality, Protection of Customer Relationships and Non-Solicitation Attachment A Agreement" ("Attachment A Agreement") as a condition of employment with Sirius, unless otherwise approved by the Executive Vice-President of Sales. The Attachment A Agreement contains an obligation not to disclose confidential information and not to solicit Sirius' customers and employees, more specifically as follows:

2. **Protection of Customer Relationships.** For purposes of this paragraph, "Sirius' customers" shall include every person, business or other entity which, during Employee's last 24 months of employment at Sirius, either purchased or committed to purchase any service or product from Sirius or its respective subsidiaries, affiliates or successors, and with whom Employee did business and had direct personal contact as an employee of Sirius. For a period of one (1) year after ceasing to be employed by Sirius, regardless of whether Employee's employment ends voluntarily or involuntarily, Employee shall not, directly or indirectly, as an employee or independent contractor, alone or in association, with, on behalf of, or for the benefit of any third party, provide or solicit to provide any service or product to any of Sirius' customers, which service or product is similar to or competitive with any service or product offered by Sirius, or the provision of which could adversely affect Sirius' business relationship with such customer. After Employee's employment with Sirius ceases, to the extent Employee is uncertain as to whether Employee may be violating this paragraph, Employee shall identify in writing to Sirius any person, business or other entity that Employee intends to solicit and request confirmation from Sirius as to whether that particular person, business or other entity qualifies as a Sirius customer and Sirius will confirm to Employee within seven (7) business days of Employee's request whether the contact is a Sirius customer.

3. **Non-Solicitation of Employees.** During Employee's employment with Sirius, and for a period of on (1) year thereafter, Employee will not directly or indirectly contact for the purpose of soliciting employment, solicit, employ or otherwise engage any of the employees of Sirius or any of its respective subsidiaries, affiliates or successors to leave his or her employment to work for any business, individual, company, firm, corporation, or other entity then in competition with the business of Sirius or any subsidiary, affiliate or successor of Sirius (for the purpose of this Paragraph the term "employee' shall include any person having such status with regard to Sirius or any of its respective subsidiaries and affiliates at any time during the six (6) months preceding any solicitation in question). If Employee engages in the solicitation of employees prohibited under this paragraph, it will disrupt, damage or impair Sirius' business or the business of its present of future subsidiaries or affiliates, as the case may be, and will necessarily involve the use of Confidential information which Employee acknowledge Employee are prohibited from disclosing.

Sparks was hired as a Storage Solutions Sales Specialist in Sirius' Lake Oswego, Oregon office in June 2014. Until his resignation in May 2015, Sparks was responsible for, among other things, interacting with and soliciting customers, both prospective and current, to purchase IT business solutions in the Pacific Northwest.

Sparks claims that he signed and returned the Attachment A Agreement but with the understanding that the above paragraphs would be stricken from the Attachment A Agreement. Sparks has no written proof that Sirius agreed to strike the non-solicitation provisions after Sparks signed the Attachment A Agreement in tact or that Sirius agreed, at any time, that Sparks would not be bound by the same non-solicitation obligations required of all Sirius' sales personnel. The incredibility of Sparks' claim is demonstrated by the absence of any request by him at the outset of his employment or any time thereafter of a revised Attachment A Agreement. His claim is also suspect given that he is a sophisticated sales person who has negotiated hundreds of contracts. Moreover, Sparks identifies Debbie Contreras as the individual with Sirius who advised him that the non-solicitation provisions would be stricken. Ms. Contreras was deposed on August 26, 2015, and as will be evidenced by her deposition testimony, she never had any discussions with Sparks regarding the Attachment A Agreement or removing or striking any portion of it.

As evidenced by the declaration of Stacye Schill, Director of Recruiting, Mr. Sparks received the Attachment A Agreement as part of his initial employment documents and returned it to her signed "as is." Ms. Schill attests that Sparks never indicated to her that he would not accept or did not agree to all provisions of the Attachment A Agreement. Attached to Ms. Schill's affidavit are true and correct copies of the e-mail exchanges which evidence (1) internal discussions at Sirius as to whether Sparks would agree to a non-solicitation provision which concluded with the Executive Vice President of Sales declining to approve any exception with regard to Sparks; and (2) transmittal of the employment documents, including the Attachment A Agreement, by Ms. Schill to Sparks and his return of the Attachment A Agreement, signed "as is."

As a Storage Solutions Sales Specialist, Sparks was privy to confidential and proprietary information belonging to Sirius, including but not limited to, customer information and records

(including customer files and network information, internal or customer computer configurations, customer buying needs or habits, customer payment practices or histories, and lists of contact information), pricing and marketing information, vendor lists and vendor pricing, confidential financial data, training and training programs, billing practices, implementation methodologies, marketing plans and strategies, growth strategies, transactional terms and conditions, compensation plans, and discussions regarding competitors and customers. In May 2015, Sparks voluntarily resigned from Sirius. Sparks immediately thereafter accepted a job with Nordisk Systems, Inc., which is also located in the Portland, Oregon area. *See* Ex. 3, Declar. of Brian Pixton.

As evidenced by the declaration of Joel Brillhart, Exhibit 2, a Certified Forensic Computer Examiner who performed a forensic investigation of Sparks' personal computer, Sparks had possession of hundreds of files containing Sirius' confidential and proprietary information after leaving the employment of Sirius, some of which was deleted from his computer after Sparks received an Order of a Bexar County state district court to preserve all evidence. Sparks' supervisor, Brian Pixton, also reviewed a list of file names which Mr. Brillhart obtained from his forensic examination of Sparks' computer. *See* Pixton Declar. 3. Many of those files contain information that is highly confidential to Sirius and would be covered by the Attachment A Agreement Sparks agreed to and signed.

Sparks argues that Pixton's initial discussion with Sparks when he was leaving employment with Sirius in which Pixton agreed that Sparks did not have non-solicitation covenants is somehow proof that the Attachment A Agreement was supposed to have those covenants deleted. As Mr. Pixton attests, he had no knowledge of any agreement to strike the non-solicitation provisions and he has no authority to reach any such agreement with Sparks. While Pixton did not

recall Sparks' Attachment A Agreement when Sparks first informed Pixton that he was resigning, Pixton later investigated and learned of the signed Attachment A Agreement.

Sirius and Nordisk are direct competitors. The integrity and enforcement of the protection of confidential information and customer relationships as well as the non-solicitation clauses contained in the Attachment A Agreement with Sparks is of utmost importance to Sirius' business interests. Sirius would not have put Sparks in a position of trust and confidence, provided him with such confidential, proprietary data, or paid him a premium commission rate, but for the express written promise and assurance he would not disclose confidential information or solicit customers and employees of Sirius for a period of one year after leaving the employ of Sirius.

Sirius has learned recently that Sparks, both prior to and since his resignation of employment, solicited customers of Sirius in direct violation of his Attachment A Agreement. To date, at least one client, Marion County, has switched some services from Sirius to Nordisk. Furthermore, several Sirius employees were solicited by Sparks to join Nordisk, and upon information and belief, at least two have left employment with Sirius and begun work with Nordisk to date.

### IV.  ARGUMENTS & AUTHORITIES

*A.  Preliminary Injunction Standard*

To obtain a preliminary injunction, Sirius must demonstrate: (i) a substantial likelihood of success on the merits, (ii) a substantial threat of irreparable injury if the injunction does not issue, (iii) that the threatened injury if the injunction is denied outweighs any harm that will result if it is granted, and (iv) that the injunction will not disserve the public interest. *Janvey v. Alguire,* 647 F.3d 585, 595 (5th Cir. 2011).

*B.  The Preliminary Injunction Should be Granted*

Sirius now moves for a preliminary injunction enjoining Sparks from continued violations of his common law duties and the Attachment A Agreement entered into with Sirius. Sirius' request for injunctive relief is predicated upon Sparks' repeated, blatant, and irreparably harmful violations of his common law duties and Attachment A Agreement, including (i) Sparks' use and disclosure of confidential information; (ii) Sparks' solicitation of clients away from Sirius before his departure from Sirius; (iii) Sparks' continued solicitation of clients away from Sirius after his departure and during the one-year term of the Attachment A Agreement; and (iv) Sparks' solicitation of Sirius' employees to leave their employment with Sirius. This preliminary injunction is warranted by the facts of this case, the precedent of this Circuit, and under Texas law, as follows.

**1. Attachment A Agreement is Enforceable**

First, the Attachment A Agreement is enforceable under Texas law. Under Texas law, non-solicitation agreements are enforceable so long as they satisfy the requirements of Section 15.50 of the Texas Business & Commerce Code. Specifically, a non-solicitation agreement shall be enforced if: (i) it is ancillary to or part of an otherwise enforceable agreement at the time the agreement is made, and (ii) the limitations of time, geographical area, and scope of activity are reasonable and do not impose a greater restraint than is necessary to protect the goodwill or other business interest of the promisee. TEX. BUS. & COMM. CODE § 15.50. In this case, the Non-Solicitation Attachment A Agreement was entered into ancillary to Sparks' at-will employment and his Sirius Incentive Compensation Plan. Furthermore, following Sparks' execution of the Attachment A Agreement, Sirius in fact provided him with training and confidential information. *See* Ex. 3, Pixton Declar. As such, there is no question that the Attachment A Agreement is enforceable.

## 2. Limitations in Attachment A Agreement are Reasonable.

In the Non-Solicitation Attachment A Agreement, Sparks agreed to refrain from contacting or soliciting clients or potential clients of Sirius with which he had contact during his employment with Sirius, for a period of one year following the termination of his employment. Ex. 1, Schill Declar. (bates stamp P-SCS-000172). Sparks also agreed to refrain from contacting or soliciting Sirius' employees for that same time period. *Id.* As a matter of law, the subject matter and temporal restrictions imposed by the Non-Solicitation Attachment A Agreement are reasonable. *See Daily Instr. Corp. v. Heidt,* 998 F. Supp.2d 553, 561 (S.D. Tex. 2014) (two-year restrictive covenant found reasonable, granting preliminary injunction); *Ruscitto v. Merrill Lynch,* 777 F. Supp. 1349, 1353 (N.D. Tex. 1991) (non-solicitation reasonable where it "merely restricted [employee] for one year from soliciting clients whom he served or whose names became known to him while" employed).

## 3. Sirius Substantially Likely to Prevail on the Merits

First, Sirius is likely to prevail on the merits of its breach of contract claim against Sparks. The existing evidence demonstrates Sparks has engaged in a campaign attempting to solicit, divert, and induce Sirius' existing clients – who were known to Sparks or with which he worked while employed with Sirius – to transition their business to his new employer, Nordisk. *See* Ex. 9. In fact, the evidence already establishes that Sparks was inducing Sirius' clients to leave the company while he was still employed by Sirius, evidencing his breach of contract, duty of loyalty, and his unclean hands in this matter. *See* Ex. 9. Further, Sparks has solicited employees of Sirius and one employee has joined Sparks at Nordisk. *See* Ex. 8.

Faced with such a blatant campaign to steal away a former employer's customers, and to destroy its client relationships and goodwill, courts have consistently granted preliminary

injunctions in such situations. For example, in *Wendt,* the evidence demonstrated that the former employee "solicited … customers to [his new employer] and made sales to them … right after he resigned …, which also involved the sharing of [former employer's] confidential information." *Premier Polymers, LLC v. Wendt,* No. 15-1812, 2015 WL 4434552, *6 (S.D. Tex. July 17, 2015). Faced with this evidence of probable wrongdoing and breach of the underlying agreement, the court found the claimant was likely to succeed and was entitled to a preliminary injunction. *Id.*

### 4. Sirius Faces a Substantial Threat of Irreparable Injury

Second, a preliminary injunction is required due to the real and present threat that, if Sparks' misconduct is not immediately ceased, Sirius will suffer irreparable injury. "The [threatened] irreparable harm must be more than an unfounded fear, but need not be an existing injury—a strong threat of injury is sufficient" to satisfy this element." *Transperfect Translations, Inc. v. Leslie,* 594 F. Supp.2d 742, 757 (S.D.Tex. 2009). "Likely economic injuries may support a finding of irreparable harm especially if the economic losses are difficult to quantify." *Id.* However, Sirius' damages already go far beyond mere economic injury, and Sparks' conduct has cost the company existing and potential customer relationships, the loss of company goodwill, and the threatened release and misuse of Sirius' proprietary, confidential, and trade secret information. These existing damages will be compounded and entirely irreparable if a preliminary injunction does not issue.

Even if money damages are later awarded to Sirius, they will be unable to make the company whole. "Monetary damages are inadequate … to replace an ongoing customer relationship and the intimate details that a sales representative learns about the customer." *Wendt* at *6. Similarly, courts have held that a company "is threatened with irreparable injury by the plaintiff's breach of [an agreement], and the defendant would suffer harm in terms of lost customer

goodwill, trade secrets, and lost business." *Dickey's Barbecue Rest., Inc. v. GEM Invest. Group, LLC,* No. 3:11-cv-2804, 2012 WL 1344352, *4 (N.D. Tex. Apr. 18, 2012) (citing *Ruscitto*, 777 F. Supp. at 1354); *see also Am. Express Fin. Advisors v. Scott,* 955 F. Supp. 688, 693 (N.D. Tex. 1996) (finding plaintiff would suffer irreparable injury *vis a vis* loss of customer goodwill and business absent injunctive relief).

In light of this precedent, Sirius faces at least three types of irreparable injury if a preliminary injunction does not issue. First, Sparks will continue to divulge, misuse, or impart to his new employer—and Sirius' competitor—the confidential and proprietary information provided to him pursuant to the Attachment A Agreement. *See Transperfect Translations,* 594 F. Supp.2d at 757 (finding claimant's presumptive inability "to cabin" his "intimate knowledge" of employer's business strategies and clients threatened irreparable injury). Second, Sparks' solicitation and diversion of Sirius' customers and potential customers threatens loss of business goodwill, which the company has invested substantial time and expense in developing. Ex. 3, Pixton Declar.; *Merrill Lynch v. Wright,* 3:93-cv-01101, 1993 WL 13036199 (N.D. Tex. 1993) ("a substantial threat of irreparable injury [exists] in the form of loss of customer goodwill, trade secrets, and lost business."). Finally, Sparks' "use of [Sirius'] confidential information and the possibly loss of customers [themselves] is sufficient to establish irreparable harm." *Id.; Transperfect Translations,* 594 F. Supp.2d at 757. In light of the foregoing precedent and the undisputed evidence, Sparks' misconduct will likely cause Sirius to suffer significant irreparable harm, further justifying preliminary injunctive relief.

### 5. The Preliminary Injunction Outweighs Any Harm to Sparks

The balancing of hardships further justifies a preliminary injunction enforcing the Non-Solicitation Attachment A Agreement. In this case, Sirius is not seeking to enforce a non-

competition agreement that would completely restrict Sparks from working anywhere within the field or industry. Instead, it is simply enforcing the Non-Solicitation Attachment A Agreement, as agreed to, which would prevent him from contacting specific, known clients of Sirius for a one-year period. As such, Sparks is free to solicit and service any other companies in need of Nordisk's services. Even if a preliminary injunction is entered, Sparks would retain full ability to engage in his trade and solicit new, non-Sirius clients through any lawful avenues. Thus, because Sparks' conduct risks irreparable harm to Sirius, and because injunctive relief would nonetheless allow him to pursue a living during this one-year period, the balancing analysis counsels in favor of a preliminary injunction. *Premier Polymers,* 2015 WL 4434551 at *7 (finding no undue hardship to enjoined party where "there [we]re still quite a few customer" that he could contact"); *see also Wright* 1993 WL 13036199 at *5 (any harm to enjoined parties would not "outweigh the losses [plaintiff] will incur in lost customer goodwill, trade secrets, and lost business if the injunction is not granted.").

### 6. Preliminary Injunction Would not Disserve Public Interest

Finally, enforcement of the Non-Solicitation and issuance of a preliminary injunction would in no way disserve the public interest. Valid restrictive covenants "encourage employers to entrust confidential information and relationships to key employees." *Wendt,* 2015 WL 4434551 at *7 (citing *Marsh USA Inc. v. Cook,* 354 S.W.3d 764, 773 (Tex. 2011)). In fact, Texas law directly provides that, through Section 15.50 and under that statute, enforcement of restrictive covenants is within the public interest. *Transperfect Translations,* 594 F. Supp.2d at 758. In essence, these agreements also protect employers' ability to "invest significant resources in developing good will that an employee could otherwise immediately take and use against them in business." *Wendt,* 2015 WL 4434551 at *7. Consequently, enforcement of the Attachment A

Agreement and awarding a preliminary injunction would in fact further the public's interest, would in no way disserve the public interest, and is therefore justified under Section 15.50.

## V. REQUEST FOR EXPEDITED HEARING & PRAYER FOR RELIEF

Plaintiff Sirius Computer Solutions, Inc. requests that the Court hold an expedited hearing on August 31, 2015 in the afternoon to allow Sirius to present further evidence in support of its request for preliminary injunction. Sirius also asks the Court to allow it to file a supplemental brief following the expedited hearing, if desired by the Court, in order to further address the totality of the evidence presented and how it justifies and supports preliminary injunctive relief. Sirius prays for all other relief to which it may be entitled.

Respectfully submitted,

SCHMOYER REINHARD LLP
17806 IH 10 West, Suite 400
San Antonio, Texas 78257
Telephone:   210/447-8033
Facsimile:   210/447-8036


/s/ Christine E. Reinhard
Christine E. Reinhard
State Bar No. 24013389
creinhard@sr-llp.com
Annalyn G. Smith
State Bar No. 18532500
asmith@sr-llp.com

**ATTORNEYS FOR PLAINTIFF**
**SIRIUS COMPUTER SOLUTIONS, INC.**

## **CERTIFICATE OF SERVICE**

On August 26, 2015, a true and correct copy of this document was filed electronically, notice of the filing was served on all counsel of record by operation of the Court's electronic filing system, and all parties may access this filing through the Court's electronic filing system.

/s/ Christine E. Reinhard
Christine E. Reinhard