# IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
### SAN ANTONIO DIVISION

| | | |
|---|---|---|
| SIRIUS COMPUTER SOLUTIONS, INC., | § | NO. 5:15-CV-698-DAE |
| | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| vs. | § | |
| | § | |
| JASON SPARKS, | § | |
| | § | |
| Defendant. | § | |
| _____ | § | |

## ORDER (1) GRANTING MOTION TO DISMISS COUNTERCLAIMS, AND (2) DENYING MOTION TO DISMISS RETENTION BONUS CLAIM

The matters before the Court are (1) Plaintiff Sirius Computer Solutions, Inc.'s ("Plaintiff" or "Sirius") Motion to Dismiss Second Amended Counterclaims (Dkt. # 64), and (2) Defendant Jason Sparks's Motion to Dismiss Retention Bonus Claim (Dkt. # 65). The Court held a hearing on these motions on May 4, 2016. At the hearing, Christine Reinhard, Esq. represented Sirius, and Dawn Finlayson, Esq. represented Defendant. Upon careful consideration of the arguments asserted in the supporting and opposing memoranda, as well as the arguments presented at the hearing, the Court (1) **GRANTS** Sirius's motion to

dismiss second amended counterclaims, and (2) **DENIES** Defendant's motion to

dismiss retention bonus claim.

BACKGROUND

I.      Factual Background

Sirius is a technology based solutions provider with headquarters in

San Antonio, Texas.  (Dkt. # 1-1 at 9.)  Sirius maintains sales locations throughout

the United States.  (Id.)  In June 2014, Defendant Jason Sparks ("Sparks") was

hired as a Storage Solutions Sales Specialist in Sirius's Lake Oswego, Oregon

office.[1]  (Id. at 10.)  As part of his duties, Sparks was responsible for interacting

with and soliciting customers, both prospective and current, to purchase

information technology ("IT") business solutions in the Pacific Northwest.  (Id.)

According to Sirius, all sales employees who receive a premium

commission rate under the Incentive Compensation Plan, such as Sparks, are

required to enter into a "Confidentiality, Protection of Customer Relationships and

Non-Solicitation Agreement" (the "Agreement").  (Id. at 9.)  The Agreement

contains two sections entitled "Protection of Customer Relationships" and "Non-

Solicitation of Employees," which discuss an employee's obligation not to disclose

confidential information and not to solicit Sirius's customers and employees both

during employment and for a period of one year after termination from

---

[1] Sparks is a resident of Washington.  (Dkt. #1-1 at 8.)

employment.  (Id.)  The Agreement also contains a forum-selection clause, entitled

"Applicable Law and Venue," which states that disputes arising under the

Agreement "shall be brought solely and exclusively in a court sitting in San

Antonio, Bexar County, Texas," and that the employee "irrevocably accepts the

jurisdiction of the federal and state courts of the State of Texas for such disputes."

(Dkt. # 6-7 at 45.)  Sirius maintains that Sparks agreed to abide by these provisions

when he signed the Agreement upon his employment with Sirius.  (Id.)

Sparks resigned from Sirius on May 8, 2015.  (Dkt. # 14-2 at 3.)

Thereafter, Sparks began employment with Nordisk Systems ("Nordisk"), located

in the Portland, Oregon area.  (Dkt. # 6-7 at 45.)  Sirius contends that it is in direct

competition for business solutions with Nordisk.  (Id.)  According to Sirius,

Sparks, both prior to and since his resignation, solicited customers and fellow

employees of Sirius in direct violation of the Agreement.  (Id. at 12.)

II.    Procedural Background

On August 6, 2015, Sirius filed suit in the 438th Judicial District

Court of Bexar County, Texas, alleging claims against Sparks for (1) breach of

contract; (2) breach of fiduciary duty, including breach of the duties of

confidentiality and loyalty; (3) tortious interference with contractual relations,

prospective business advantage, and employment relations; and (4) injunctive

relief, including a temporary restraining order ("TRO"), and a temporary and

permanent injunction. (Dkt. # 1-1.) The same day, the state court granted Sirius's request for a temporary restraining order. (Id. at 28.) On August 17, 2015, Sparks removed the suit to this Court, in the Western District of Texas, invoking the Court's diversity jurisdiction. (Dkt. # 1.)

On August 14, 2015, eight days after Sirius filed suit against Sparks, Sparks and Nordisk filed suit against Sirius in the United States District Court for the District of Oregon, alleging claims for (1) declaratory judgment; (2) breach of contract; and (3) unfair competition (the "Oregon Litigation"). (Dkt. # 4-1.)

On October 5, 2015, this Court ordered that Sparks's claims pending in the Oregon Litigation be severed, transferred, and consolidated with this case. (Dkt. # 38 at 50.) The Court also denied Sparks's motion for change of venue. (Id.) The Court further ordered that Sirius's application for preliminary injunction be granted; Sparks was preliminarily enjoined from, among other things,

> directly or indirectly, as an employee or an independent contractor, alone or in association, with, on behalf of, or for the benefit of any third party, provide or solicit to provide any service or product to any of Sirius's customers, which service or product is similar to or competitive with any service or product offered by Sirius, or the provision of which could adversely affect Sirius's business relationship with such customer; nothing herein however shall preclude Sparks from engaging in business with individuals who have contacted him independent of any direct or indirect solicitation by himself or others on his behalf by former or current Sirius customers; . . . .

(Id.; Dkt. # 48.)

4

On December 15, 2015, Sirius filed its first amended complaint, clarifying its claims against Sparks for breach of contract, adding a claim for breach of contract on his retention bonus agreement, and adding a claim for misappropriation of confidential information and trade secrets. (Dkt. # 58.) The same day, Sparks filed his second amended counterclaims against Sirius, alleging counterclaims for (1) wrongful injunction – injunction bond; (2) wrongful injunction – malicious prosecution; (3) a breach of contract/wage claim; and (4) tortious interference with an existing contract. (Dkt. # 57.)

On January 15, 2016, Sirius filed a motion to dismiss Sparks's second amended counterclaims. (Dkt. # 64.) Sparks filed a response on January 29, 2016 (Dkt. # 68), and Sirius filed its reply on February 8, 2016 (Dkt. # 70). On January 25, 2016, Sparks filed a motion to dismiss Sirius's retention bonus claim. (Dkt. # 65.) Sirius filed a response on February 8, 2016 (Dkt. # 69), and Sparks filed his reply on February 19, 2016 (Dkt. # 74.) The two pending motions are discussed below.

## APPLICABLE LAW

Sirius moves to dismiss Sparks's counterclaims under Rule 12(b)(6) of the Federal Rules of Civil Procedure. (Dkt. # 64.) Sparks moves to dismiss Sirius's retention bonus claim under Rule 12(b)(2) of the Federal Rules of Civil Procedure.

I.    Rule 12(b)(6)

Federal Rule of Civil Procedure 12(b)(6) authorizes dismissal of a complaint for "failure to state a claim upon which relief can be granted."  In analyzing a motion to dismiss for failure to state a claim, the court "accept[s] 'all well pleaded facts as true, viewing them in the light most favorable to the plaintiff.'"  United States ex rel. Vavra v. Kellogg Brown & Root, Inc., 727 F.3d 343, 346 (5th Cir. 2013) (quoting In re Katrina Canal Breaches Litig., 495 F.3d 191, 205 (5th Cir. 2007)).

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).

II.    Rule 12(b)(2)

A party may move to dismiss a claim under Rule 12(b)(2) for lack of personal jurisdiction.  Fed. R. Civ. P. 12(b)(2).  If a party raises the defense of lack of personal jurisdiction, the non-moving party bears the burden of proving personal jurisdiction.  Luv N'care, Ltd. v. Insta-Mix, Inc., 438 F.3d 465, 469 (5th Cir. 2006).  Although the non-moving party bears the burden, "[w]hen a court rules on

a motion to dismiss for lack of personal jurisdiction without holding an evidentiary hearing . . . the non-moving party need only make a prima facie showing, and the court must accept as true the non-mover's allegations and resolve all factual disputes in its favor." Guidry v. U.S. Tobacco Co., Inc., 188 F.3d 619, 625 (5th Cir. 1999); see also Stripling v. Jordan Prod. Co., 234 F.3d 863, 869 (5th Cir. 2000) (explaining that we "accept as true the uncontroverted allegations in the complaint and resolve in favor of the plaintiff any factual conflicts.").

ANALYSIS

I.    Sirius's 12(b)(6) Motion

Sirius first moves to dismiss Sparks's counterclaim for wrongful injunction regarding the injunction bond on the ground that it fails to allege a claim for which relief may be granted. (Dkt. # 64 at 2.) Sirius also moves to dismiss Sparks's counterclaim for wrongful injunction based on malicious prosecution because it also fails to state a claim for relief. (Id. at 6.) Sirius further moves to dismiss Sparks's breach of contract/wage claim and his tortious interference counterclaims. (Id. at 9, 11.)

A.    Wrongful  Injunction – Injunction Bond

Sparks argues that the TRO imposed by the state court included terms that were not included in the Agreement and that it was based on false information regarding a prospective customer, forcing him to comply with the TRO to his

7

detriment. (Dkt. # 57 at 5.) Sparks also contends that Sirius breached the condition of the TRO requiring it to pay a bond upon dissolution of the TRO. (Id. at 6.)

"A person who wrongfully obtains an injunction is liable for damages caused by issuance of the injunction." Tanguy v. Laux, No. 01-13-00501-CV, 2015 WL 3908186, at *3 (Tex. App.—Houston [1st Dist.] June 25, 2015, pet. denied) (citing DeSantis v. Wackenhut Corp., 793 S.W.2d 670, 685 (Tex. 1990)). "A cause of action for wrongful prosecution is predicated on a breach of the injunction bond's condition that the injunction applicant will abide by the court's decision and will pay all sums adjudged against it if the temporary injunction is dissolved in whole or in part." Ameristar Jet Charter, Inc. v. Cobbs, 184 S.W.3d 369, 377 (Tex. App.—Dallas 2006, no pet.). "The purpose of the bond is to protect the defendant from the harm he may sustain as a result of temporary relief granted upon the reduced showing required of the injunction plaintiff, pending full consideration of all issues." DeSantis, 793 S.W.2d at 685–86.

"To prevail in an action on an injunction bond, the claimant must prove that the TRO or temporary injunction was issued or perpetrated when it should not have been and was later dissolved." Tanguy, 2015 WL 3908186 at 3. "The claimant need not prove that the injunctive relief was obtained maliciously or without probable cause." Id. A claimant must prove, however, that the issuance of

the injunction caused him damages.  Id.  "He cannot recover for having been

prohibited from doing something that he had no right to do."  Id.

Sirius argues that Sparks's counterclaim on the injunction bond must

be dismissed because the TRO was not dissolved in his favor, and Sparks has not

pled sufficient facts that the TRO was wrongfully obtained.  (Dkt. # 64 at 3–4.)

Sirius contends that the TRO was not dissolved in his favor, but was replaced with

this Court's preliminary injunction favoring Sirius.  (Id. at 4.)  Sirius also asserts

that Sparks never filed a motion to dissolve the TRO when he had the opportunity

to do so.  (Id.)  Additionally, Sirius argues that it has shown its likelihood of

prevailing on the merits at least twice in this case, most importantly when the

preliminary injunction replaced the TRO.  (Id. at 4–5.)

In his response, Sparks argues that the TRO was too broad because it

prohibited him from soliciting Sirius's prospective customers, as opposed to the

preliminary injunction later issued, which only prohibited him from soliciting

Sirius's actual customers.  (Dkt. # 68 at 4.)  Sparks asserts that Sirius waived its

argument that the TRO was not dissolved when it sought a much narrower

preliminary injunction.  (Id.)  As a result, Sparks argues that in effect, the TRO was

nonsuited by Sirius which resulted in a favorable dissolution of the TRO to Sparks.

(Id.)  Sparks also contends that he was not required to immediately challenge the

TRO because the case was promptly removed to federal court upon its issuance

and that challenging the TRO is not a requirement of a wrongful injunction claim. (Id. at 8.)

Regardless of whether Sparks was required to challenge the TRO at an earlier stage of this litigation, he has not proven that the TRO was issued when it should not have been, and then was later dissolved.  See DeSantis, 793 S.W.2d at 685.  Instead of an explicit dissolution, the TRO was replaced with this Court's own preliminary injunction.  (See Dkt. # 38.)  The preliminary injunction, like the TRO, favored Sirius; therefore, Sparks does not have any support for his assertion that the TRO was issued when it should not have been.  Although Sparks argues that the TRO was broader than the language in the preliminary injunction regarding "prospective" customers, Sirius's reply brief persuasively points out that the "prospective" language in the TRO was included to (1) cover any customer that was "committed to purchase" from Sirius as discussed in the Agreement's attachment, and (2) prohibit Sparks's from violating the confidentiality provisions in the Agreement.  (See Dkt. # 70 at 2.)  The term "prospective" thus appeared necessary to preserve the status quo at the time the TRO was issued, and until the Court could rule on the preliminary injunction.  In such case, Sparks's contention that the TRO in effect was non-suited because the preliminary injunction did not include such language is without merit.

Additionally, there is no support for Sparks's assertion that the TRO was issued on false information supplied by Sirius.  (See Dkt. # 57 at 5.)  In fact, Sparks does not address this assertion in his response to Sirius's motion to dismiss. (See Dkt. # 68.)  In any case, Sirius bases its claim for breach of contract regarding a prospective customer, Marion County, on Sparks's alleged "unlawful use of Sirius's confidential and propriet[ary] information."  (Dkt. 1-1 at 13.)  Therefore, contrary to Sparks's allegations in this counterclaim, Sirius does not base its allegations against Sparks's on his solicitation of Marion County in violation of the non-solicitation provisions of the Agreement, but only on his potential violation of the confidentiality agreement.

Accordingly, Sparks has not pled sufficient facts to state a claim for relief that is plausible on its face for his wrongful injunction counterclaim based on the injunction bond.  He has not sufficiently alleged that Sirius breached any condition of the bond that warrants relief, and this claim must be dismissed.

B.    Wrongful Injunction – Malicious Prosecution

Sparks also alleges a counterclaim against Sirius for wrongful injunction based on malicious prosecution.  (Dkt. # 57 at 6.)  Sparks asserts that the injunction suit was prosecuted maliciously and without probable cause.  (Id.) Again, Sparks relies on the same assertions he argued above, that the TRO was overbroad and based on false information.  (Id. at 7.)

"To prevail on a malicious prosecution cause of action for wrongful injunction, the claimant 'must prove that the injunction suit was prosecuted maliciously and without probable cause and was terminated in the claimant's favor.'" Tanguy, 2015 WL 3908186 at *3 (quoting DeSantis, 793 S.W.2d at 686). "Once the injunction plaintiff has prevailed after full hearing of all issues, damages to the defendant result not from the reduced showing required to obtain temporary relief but from the full proof necessary to succeed on the merits, and defendant cannot recover those damages without full proof of malicious prosecution." DeSantis, 793 S.W.2d at 686.

"In an action for malicious prosecution, all actual damages may be recovered." DeSantis, 793 S.W.2d at 686. A claimant must prove that the issuance of the injunction caused him damages. Id. Like his claim for the injunction bond, Sparks cannot recover from being prohibited from something which he had no right to do. Id. "Nor can he recover for having been prohibited from doing something which he agreed not to do, even if the agreement was unenforceable." Id.

Sparks has failed to state a claim for wrongful injunction for malicious prosecution because the underlying civil suit against him has yet to terminate in his favor, much less terminate at all. See DeSantis, 793 S.W.2d at 686. Furthermore, as discussed above, the TRO did not terminate or dissolve in his

favor. Sparks's contention that the TRO was overbroad is without merit as discussed above, and there is no factual support for his allegation in his counterclaim that the TRO was issued based upon false information supplied by Sirius. In such case, Sparks has failed to allege facts to state a plausible claim for relief that the injunction suit was prosecuted maliciously and without probable cause, and that the injunction suit terminated in his favor. Accordingly, Sparks's counterclaim for wrongful injunction based on malicious prosecution will also be dismissed.

C.     Breach of Contract/Wage

Sparks asserts a counterclaim against Sirius for a "breach of contract/wage claim." (Dkt. # 57 at 9.) Within the counterclaim, Sparks alleges that when he was offered the position with Sirius, "the job offer included the payment of commission splits—half of gross profit (GP)—for all storage sales in the Northwest District." (Id.) Sparks contends that Sirius promised it would bring him into existing accounts and pay him a split commission on them. (Id.) He asserts that he accepted the job with Sirius based on these promises, as memorialized in the Incentive Compensation Plan (the "Plan"), and that he became one of Sirius's top sales personnel, making around $6 million in sales, while employed with Sirius. (Id. at 10.) Nevertheless, Sparks contends that Sirius materially breached "its implied duty of good faith and fair dealing" because Sirius failed to pay him

commissions and splits owed to him, and excluded him from existing accounts. (Id.)

Under Texas law, a claim for breach of duty of good faith and fair dealing is a tort action that arises from an underlying contract. Cole v. Hall, 864 S.W.2d 563, 568 (Tex. App.—Dallas 1993, writ dism'd w.o.j.) (en banc). Texas courts have recognized that not every contractual relationship creates a duty of good faith and fair dealing. City of Midland v. O'Bryant, 18 S.W.3d 209, 215 (Tex. 2000); Cole, 864 S.W.2d at 568. In fact, the Texas Supreme Court has specifically rejected the implication of a general duty of good faith and fair dealing in all contracts. City of Midland, 18 S.W3d at 215. An actionable duty has been imposed only when there is a special relationship, such as that between an insured and his or her insurance carrier. Id. In City of Midland, the Texas Supreme Court expressly found that the elements which create a special relationship between an insurer and an insured are absent in the relationship between an employer and an employee. Id. The Court stated "[a] court-created duty of good faith and fair dealing would completely alter the nature of the at-will employment relationship . . . and we decline to the change the at-will nature of employment in Texas." Id. at 216.

Accordingly, because there is no implied duty of good faith and fair dealing under Texas law as applied to employment relationships, Sparks's

counterclaim for a breach of contract premised on these duties fails. Still, Sparks

argues that the Court has not sufficiently determined that the Plan—the basis of his

breach of contract counterclaim—is controlled by Texas law. (Dkt. # 68 at 14.)

The Court previously ruled that Texas law applied to interpreting the Plan as it

related to the parties' non-compete and non-solicitation agreement, but Sparks

argues that the Court has not ruled that the actual compensation issues within the

Plan are controlled by Texas law. (Id.) In other words, Sparks argues that the

Court's ruling on the choice of law in the Agreement "was not expressly made

applicable to the compensation under 'the Plan,' and that it is clearly not applicable

to a separate cause of action for a breach of the duty of good faith and fair

dealing." (Id.)

Sparks's pleading states that at all material times, he was a resident of

Washington and performed work under his employment contract as an employee of

Washington and Oregon. (Dkt. # 57 at 11.) Sparks's counterclaim also alleges

that Sirius failed to pay him commissions and splits pursuant to both Oregon and

Washington law. (Id.) Based on these pleadings, Sparks argues that Oregon

and/or Washington law should govern this counterclaim.

The Court previously determined that based on the Agreement's

forum-selection provision, Texas law applied to all disputes arising under the

Agreement. (Dkt. # 38 at 10–11.) The Court based this decision on the

Agreement's forum-selection clause, entitled "Applicable Law and Venue," which states that disputes arising under the Agreement and the Plan "shall be brought solely and exclusively in a court sitting in San Antonio, Bexar County, Texas," and that the employee "irrevocably accepts the jurisdiction of the federal and state courts of the State of Texas for such disputes." (Dkt. # 6-7 at 45.) Importantly, the forum-selection provision is broadly worded to include disputes brought not only under the Agreement, but also those disputes brought under the Plan. (Id.)

Sparks's breach of contract/wage counterclaim clearly arises under the the Plan; therefore, it is governed by Texas law because of the language of the forum-selection provision. (See Dkt. # 6-7 at 37–45.) The Plan is a contract included in the overall employment agreement Sparks signed with Sirius. As such, Sparks's counterclaim under the Plan is not a separate cause of action arising apart from the terms of his overall agreement with Sirius. Sparks's counterclaim for breach of contract/wage ultimately deals with the construction and interpretation of the Plan, which is clearly covered under the forum-selection provision entitled "Applicable Law and Venue." (See id. at 45); cf. Benchmark Elec., Inc. v. J.M. Huber Corp., 343 F.3d 719, 726–27 (5th Cir. 2003) (holding that Texas law applied to claims of fraud and negligent representation even though the parties' agreement contained New York law forum-selection clause, because the clause dealt only with the construction and interpretation of the contract). Accordingly,

because Texas law does not provide for a claim based on a breach of an implied duty of good faith and fair dealing in the employment context, Sparks's counterclaim under the Plan is dismissed.

D.    Tortious Interference

Sparks also alleges a counterclaim against Sirius for tortious interference with an existing contract.  (Dkt. # 57 at 12.)  Sparks contends that Sirius willfully and intentionally interfered with the valid employment contract he had with Nordisk by obtaining an overbroad ex parte TRO in this case.  (Id.)  Like his other arguments regarding the TRO, Sparks argues that the language in the TRO regarding "prospective customers," was overbroad and prevented him from performing his employment duties with Nordisk.  (Id.)

The parties seem to agree that Oregon law is applicable to Sparks's tortious interference counterclaim.  (See Dkt. # 70 at 5; Dkt. # 68 at 15.)  Indeed, his claim for tortious interference does not arise under either the Agreement or the Incentive Compensation Plan; accordingly, the Court agrees that Oregon law applies to this counterclaim.  See Benchmark Elec., 343 F.3d at 726–27.

Under Oregon law, a plaintiff must prove the following elements for a claim of tortious interference with contractual relations: "(1) the existence of a valid business relationship or expectancy, (2) intentional interference with that relationship, (3) by a third party, (4) accomplished through improper means or for

an improper purpose, (5) a causal effect between the interference and the damage to economic relations, and (6) damages." <u>Uptown Heights Assocs. v. Seafirst Corp.</u>, 320 Or. 638, 651 (1995).

Sparks's pleading does not raise a claim for tortious interference with contractual relations under Oregon law. Again, as discussed previously, the TRO was not overbroad nor was it based on false representations. The TRO was requested, and ultimately granted, based on the contents of the parties' contractual employment agreement. Therefore, Sparks has not properly alleged the fourth element of the claim—that Sirius interfered with his contractual relations by improper means or for an improper purpose. <u>See</u> <u>Uptown Heights</u>, 320 Or. at 651–52. "As a matter of law, a party invoking the express terms of a contract has a 'legitimate' purpose and does not expose itself to liability for interference with economic relations." <u>Bernard v. S.B., Inc.</u>, 350 P.3d 460, 462 (Or. Ct. App. 2015) (citing <u>Uptown Heights</u>, 320 Or. at 651–52). This is because "under those circumstances, a party who has interfered with another party's economic relations has done so under the express terms of the written contractual remedy." <u>Id.</u> (quotation omitted). "To rule otherwise would contravene public policy and undermine the stability of contractual relations as it would be anomalous to hold that a party to a contract nonetheless must defend a tort claim' in the event that that party did precisely what it was entitled to do under the contract." <u>Id.</u> (quotation

omitted).  Accordingly, Sparks's claim under Oregon law for tortious interference with contractual relations must be dismissed.[2]

For the reasons stated above, Sparks has failed to plead "enough facts to state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  Therefore, Sirius's motion to dismiss Sparks's counterclaims is **GRANTED**.  Because Sparks has had the opportunity to amend his counterclaims at least twice, they will be **DISMISSED WITH PREJUDICE**.

II.      Sparks's Rule 12(b)(2) Motion to Dismiss

Sparks moves to dismiss Sirius's breach of contract claim based on the bonus retention.  (Dkt. # 65.)  Sparks argues that this claim—newly added by Sirius in its first amended complaint after the Court issued its ruling that venue was proper in the Western District of Texas—arises from a "bonus retention letter," and is separate from Sirius's other claims regarding the disputed non-solicitation and non-compete provisions of the Agreement.  (Id. at 2.)  He therefore asserts that this claim should be dismissed pursuant to Rule 12(b)(2) because the Court does not have personal jurisdiction nor pendent personal jurisdiction over Sparks with respect to this claim.  (Id. at 4.)  Sparks alternatively contends that the claim should

---

[2] Based on this ruling, the Court will not consider the merits of Plaintiff's argument that Defendant's counterclaim for tortious interference is precluded by Oregon's Anti-SLAPP statute.  (See Dkt. # 70 at 6.)

be dismissed pursuant to Rule 12(b)(3) because venue in the Western District of Texas is not proper for this claim.  (Id. at 11.)

Sirius alleges the following facts as the basis for its breach of the bonus retention claim: three months after Sparks signed his offer letter and compensation plan, Sirius offered him a $30,000 retention bonus ("Retention Bonus Letter" or "RBL") contingent upon his continued employment with Sirius through September 30, 2016.  (Dkt. # 69 at 3; Dkt. # 69-4 at 2.)  Sparks signed the RBL on September 17, 2014, in which Sirius agreed to pay him an additional compensation of $30,000, payable in two $15,000 installments.  (Dkt. # 69-4 at 2.) The initial $15,000 was dispersed to Sparks on September 30, 2014; a second $15,000 was to be dispersed on September 30, 2016.  (Id.)  The RBL also stated that if Sparks was not employed with Sirius for any reason on September 30, 2016, he would be required to pay back the initial $15,000 payment, and would not be eligible to receive the second $15,000 payment in 2016.  (Id.)  The RBL also states that "[a]ll other terms and conditions of your employment remain as communicated in your offer letter and compensation plan."  (Id.)

Sirius's claim for breach of the retention bonus alleges that Sparks failed to pay back the initial $15,000 after he left employment with Sirius prior to September 30, 2016.  (Dkt. # 58 at 10.)  In responding to Sparks's motion to dismiss, Sirius argues that the Court has personal jurisdiction over the claim

because of the forum-selection provision in the Agreement.  (Dkt. # 69 at 5.)

Sirius contends that the RBL was an addendum to the Agreement and the Plan,

which amended Sparks's original compensation plan.  (Id. at 6.)  Because both the

Agreement and the Plan contain a forum-selection provision, Sirius argues that the

RBL is likewise subject to this provision.  (Id.)

The Plan explicitly provides that "[w]ith prior notice to [Sparks],

Sirius reserves the right to amend this Plan prospectively, including any base

salary, at its sole discretion and [Sparks's] employment with Sirius continues to be

'at-will.'"  (Dkt. # 69-2 at 3.)  Additionally, the Agreement includes language

stating that "[i]n consideration for Sirius paying Employee at the premium

commission rate pursuant to the Plan, as amended from time to time ('the Plan'),

Sirius and Employee agree to enter into" the Agreement.  (Dkt. # 69-3 at 2

(emphasis added).)  The language of these two provisions, in conjunction with the

RBL's language that "[a]ll other terms and conditions of your employment remain

as communicated in your offer letter and compensation plan," make clear that the

RBL was intended as an addendum to the Agreement and the Plan, and therefore

applicable to the terms of the forum-selection provision.

The forum-selection provision, as discussed previously, states in

relevant part: "Sirius and Employee agree that any dispute arising out of or relating

to this Agreement or the [Incentive Compensation] Plan which cannot be amicably

settled, shall be brought solely and exclusively in a court sitting in San Antonio, Bexar County, Texas, and Employee irrevocably accepts the jurisdiction of the federal and state courts of the State of Texas for such disputes." (Dkt. # 21-1 at 14.) Because the dispute concerning the RBL arises out of the Plan, the Court has personal jurisdiction, pursuant to the forum-selection provision, to hear Sirius's breach of contract claim regarding the RBL, along with personal jurisdiction over Sirius's other claims against Sparks. (See Dkt. # 38 (analyzing Sparks's motion to transfer venue).)

Even if the RBL was not an addendum which incorporated the language of the forum-selection provision, the dispute clearly arises under Sparks's compensation arrangement. A retention bonus payment is a compensation incentive that falls within the ambit of, and relates to, Sparks's Incentive Compensation Plan. The dispute therefore falls within the plain language of the forum-selection provision because it is a "dispute arising out of or relating to . . . the Plan." (See Dkt. # 21-1 at 14.)

Furthermore, in regard to Sparks's alternative request to dismiss the retention bonus claim for improper venue under Rule 12(b)(3), venue is appropriate here in this Court in the Western District of Texas because the claim is subject to the forum-selection provision as discussed above. Accordingly,

Sparks's motion to dismiss the bonus retention claim under 12(b)(2), or alternatively under 12(b)(3), is **DENIED**.

CONCLUSION

Based on the foregoing, the Court **GRANTS** Sirius's Motion to Dismiss Second Amended Counterclaim (Dkt. # 64), **DISMISSES WITH PREJUDICE** Sparks's counterclaims, and **DENIES** Sparks's Motion to Dismiss Retention Bonus Claim (Dkt. # 65).

**IT IS SO ORDERED.**

**DATED**: San Antonio, Texas, May 4, 2016.

_____
David Alan Ezra
Senior United States Distict Judge